IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY R. J.,[1]

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action 3:22-cv-216
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Timothy R. J., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **OVERRULED**, and this matter is **REMANDED** pursuant to Sentence four of § 405(g).

    **I.**    **BACKGROUND**

Plaintiff protectively filed SSI and DIB applications on October 6, 2017, alleging that he became disabled on March 1, 2015. On September 8, 2017, Plaintiff's pulmonologist, Dr. Allen,

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

completed a physical assessment form and indicated that Plaintiff had several work-related limits, including that he was limited to sitting for four to five hours during an eight-hour workday and was not capable of any walking at work. (R. 608–09.) Dr. Allen completed a second physical assessment form on October 26, 2017, and indicated that Plaintiff's work-related limits included sitting two hours during an eight-hour workday, needing two unscheduled fifteen-minute breaks during an eight-hour workday, and being absent once or twice a month. (R. 430–31.)

Plaintiff's file was reviewed at the initial and reconsideration levels in November 2017 and January 2018. (R. 67–72, 74–79.) It is unclear what documents were in Plaintiff's file when those reviews occurred, but the reviewers indicated that for purposes of his DIB claim, Plaintiff's file contained insufficient evidence about his condition before his date last insured. Neither reviewer commented, however, on the evidence, or lack thereof, for purposes of Plaintiff's SSI claim.

Over a year and half later, a hearing was held by an Administrative Law Judge ("ALJ") on June 5, 2019. At that time, additional medical records were entered into evidence, many of which contain documents created after the state agency file reviews were completed. (*See, e.g.*, R. 611–20, 657–87.) After the hearing, more documents were entered into evidence (R. 750–1021) before the ALJ made an unfavorable disability determination on July 24, 2019 (R. 12–30).

On April 13, 2020, the Appeals Council denied Plaintiff's request for review (R. 1096–1101), and Plaintiff timely filed an action in this Court (R. 1102–03). A United States Magistrate Judge recommended that the matter be remanded because the ALJ had failed to explain how all

2

his residual functional capacity ("RFC")[2] findings corresponded to the medical findings. (R. 1110.) The Magistrate Judge further noted that "no medical source evaluated Plaintiff's neuropathy or how it may limit his ability to work," and that "no medical source considered Plaintiff's obstructive sleep apnea." (R. 1110, n.3.) That recommendation was adopted and affirmed over the Commissioner's objections, and the matter was remanded on September 21, 2021. (R. 1104–113, 1114.)

Upon remand, the ALJ held a telephonic hearing on April 13, 2022, and even more medical records were entered into evidence. (R. 1059–76, 1242–1418.) The ALJ did not, however, obtain a consultative examination, seek an updated file review, or solicit testimony from a medical expert before making another unfavorable determination on June 9, 2022. (R. 1059–76.) Plaintiff did not seek written exceptions, and the Appeals Council did not assume jurisdiction over Plaintiff's case. Accordingly, that June 9, 2022 determination became the Commissioner's final determination after remand.

Plaintiff seeks judicial review of that second unfavorable determination. He submits that remand is warranted because the ALJ reversibly erred by failing to further develop the record by obtaining new opinion evidence. (Pl.'s Statement of Errors 9–12, ECF No. 12.)[3] Plaintiff is correct.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

[3] Because Plaintiff's first contention of error warrants remand, the Court does not reach Plaintiff's second contention of error.

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. ANALYSIS

As previously explained, Plaintiff argues that the ALJ erred by failing to further develop the record by obtaining updated opinion evidence. The Court agrees.

A plaintiff bears the burden of proving the existence and severity of limitations that are caused by his impairments. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007). But an ALJ bears the burden of developing the administrative record upon which a disability determination rests. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). An ALJ has a duty to develop the record because "[s]ocial security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-1535, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013); *see also, Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits.").

An ALJ is not required to base his RFC determination on a medical opinion. *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers where the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

Even so, an ALJ must obtain opinion evidence to satisfy his duty to develop the record in at least two circumstances. One circumstance arises when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data. *Gonzalez v. Comm'r of Soc. Sec.*, 3:21-cv-000093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Alexander v. Kijakazi*, No. 1:20-cv-01549, 2021 WL 4459700, at *9 (N.D. Ohio Sept. 29, 2021) ("Courts are generally unqualified to interpret raw medical data and make medical judgments concerning limitations that may reasonably be expected to accompany such data.") and *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological exam necessarily ruled out the existence of a disabling condition)).

A medical opinion must also be obtained when "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Id*. (quoting *McCauley v Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17, 2021) (cleaned up)). In such circumstances, an ALJ should obtain opinion evidence that accounts for the entirety of the relevant period. *Id*. That obligation exists unless the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008) (cleaned up)).

Here, Plaintiff's pulmonologist, Dr. Allen, completed two physical assessment forms in the Fall of 2017. The state agency reviewers reviewed Plaintiff's file in November 2017 and January 2018. The ALJ found Dr. Allen's opinions minimally persuasive and found the

reviewers' opinions not persuasive. Plaintiff does not challenge those assessments. He instead challenges the ALJ's decision to review subsequent evidence and formulate an RFC without the aid of a more current medical opinion. And it appears that at least four years of medical evidence, from January 2018 until January of 2022, was made part of the record but never reviewed by a medical source. Consequently, no medical source evaluated the bulk of records related to Plaintiff's impairments, or assessed how they limited his ability to work.

Significantly, this evidence includes numerous pulmonary examinations with abnormal findings. For instance, the record reflects that Plaintiff was diagnosed with pulmonary fibrosis, a restrictive lung disease. In January 2018, Plaintiff's FVC level was 55% of predicted values before bronchodilation. (R. 734.) Later pulmonary function tests appear to show a deterioration in those levels. In January 2020, his FVC level was 51% of predicted value before bronchodilation. (R. 1262.) In January 2021, it was 54% of predicted value. (R. 1262.) And in January 2022, it was 50% of predicted value. (R. 1258.) These FVC levels all constituted severely abnormal findings and suggested restrictive air disease or impairment. (R. 1261.) Although the ALJ discussed these findings (R. 1040), they possibly demonstrated a worsening of Plaintiff's pulmonary condition. But the records from 2020 through 2022 were never reviewed by any medical source—they were not available when Dr. Allen filled out assessment forms in 2017, or when the Plaintiff's file was reviewed in November 2017 and January 2018. *See Laura B. v. Comm'r of Soc. Sec.*, No. 3:18-cv-132, 2023 WL 355033, at *4 (S.D. Ohio Jan. 23, 2023) (remanding where medical records showed worsening, but no medical source had reviewed them); *Deborah Kaye F. v. Comm'r of Soc. Sec.*, No. 3:20-cv-325, 2022 WL 847257, at *3 (S.D. Ohio Mar. 22, 2022) (same).

Moreover, although the ALJ discussed these diagnostic test results, the ALJ appears to have impermissibly relied on his own interpretation of them when formulating Plaintiff's RFC. No medical source opined that Plaintiff could sit or walk for four hours during an eight-hour workday. Indeed, Dr. Allen, a pulmonologist, indicated in the Fall of 2017 that Plaintiff could not. (R. 608.) And the state agency reviewers declined to assess any work-related limits because Plaintiff's file was lacking at the time of their 2017 and 2018 reviews. (R. 67–72, 74–79.) Although an ALJ's function includes ultimately assessing a claimant's RFC, a medical expert's function includes interpreting raw medical data into terms that can be understood by an ALJ, who is not a medical professional. *Laura B.*, 2023 WL 355033, at *4 (quoting *Griffin v. Astrue*, No. 3:07-cv-447, 2009 WL 633043, at *10 (S.D. Ohio Mar. 6, 2009)). Yet no expert ever reviewed or interpreted these pulmonary findings.

Nor does the ALJ offer an adequate explanation about how he translated those diagnostic findings into work-related limits. Although the ALJ wrote that "pulmonary and primary care notes reflect minimal shortness of breath when adhering to treatment," (R. 1040), even if such treatments improved Plaintiff's breathing in a vacuum, it is unclear if they improved his breathing such that he could stand or walk for four hours while engaged in work. The ALJ also wrote that Plaintiff's activities of daily living, which were discussed elsewhere in the determination, "indicate[d] adequate functioning for a reduced range of light work . . . ." (*Id.*) However, "an RFC is not determined in light of what a claimant might be able to unreliably or intermittently accomplish, but serves as a measure of the claimant's capability for sustained work activity." *Ross v. Comm'r of Soc. Sec.,* No. 3:13–cv–20, 2013 WL 6001936, at *9 (citing 20 C.F.R. § 416.945(b)); *see also Gabbard v. Comm'r Soc. Sec.,* N. 3:11-cv-426, 2012 WL 5378747, at *14 (S. D. Ohio Oct. 30, 2012) ("[T]he ability to perform intermittent and

8

interrupted daily functions such as driving, grocery shopping, or chores, is not evidence of an ability to perform substantial gainful activity." (citing *Walston v. Gardner,* 381 F.2d 586–87 (6th Cir. 1967)). The record does not, however, show that Plaintiff consistently performed activities such that they constituted substantial evidence that he was capable of walking or standing for four hours during an eight-hour workday.

In addition, the ALJ acknowledged that "some abnormalities continued to be demonstrated" during Plaintiff's neurological examinations. (R. 1042.) But as this Court noted when this matter was previously remanded, no medical source ever evaluated Plaintiff's neuropathy or how it limited his ability to work. (R. 1110, n.3.) That problem remains unresolved.

In short, the ALJ, sans assistance from a medical expert, was presented with a critical body of objective medical evidence related to Plaintiff's impairments, including, but not limited to, Plaintiff's pulmonary fibrosis and neuropathy. But this is not a case where the evidence showed "relatively little impairment" such that the ALJ could make a "commonsense judgment about Plaintiff's RFC." Instead, the unreviewed evidence consisted of at least three years of medical records for five impairments that the ALJ deemed severe. The ALJ was, therefore, obligated to further develop the record by securing a consultative examination, seeking an updated assessment from state agency reviewers, or soliciting testimony from a medical expert. The ALJ failed to do so and instead crafted an RFC based on his own interpretation of raw medical data. For these reasons, remand is warranted.

## IV. CONCLUSION

For all the foregoing reasons, the Court **OVERRULES** the Commissioner's non-disability determination. This matter is **REMANDED** pursuant to Sentence 4 § 405(g).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE